## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONNA and DWAYNE HILL,** | : | |
| **Plaintiffs** | : | |
| | : | **No. 1:21-cv-1424** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **SUPT. HARRY.,** *et al.*, | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

On August 16, 2021, *pro se* Plaintiffs Donna and Dwayne Hill ("Plaintiffs"), who are husband and wife, initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983.  (Doc. No. 1.)  Mrs. Hill currently resides in Pittsburg, Pennsylvania, and Mr. Hill is currently incarcerated at the State Correctional Institution Phoenix ("SCI Phoenix") in Collegeville, Pennsylvania.  Plaintiffs have filed suit against SCI Camp Hill Superintendent Harry ("Harry"), SCI Phoenix Superintendent Sorber ("Sorber"), SCI Phoenix Deputy Superintendents Bradley ("Bradley") and Terra ("Terra"), SCI Phoenix Unit Manager Stenkowski ("Stenkowski"), and SCI Camp Hill Correctional Officer Knaub ("Knaub").  (*Id.*)  Plaintiffs have also filed motions for leave to proceed *in forma pauperis* (Doc. Nos. 8, 10), which the Court will grant.  Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] the Court will perform its mandatory screening of the complaint.

---

[1] *See* The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

# I.    BACKGROUND

When Mr. Hill "first arrived at SCI Camp Hill, the prison officials confiscated 15 [of his] family photos after discovering he was in an interracial relationship." (Doc. No. 1 ¶ 11.)  Officials also confiscated his radio.  (*Id.*)  Mr. Hill "started a letter writing campaign regarding his stolen radio."  (*Id.* ¶ 12.)  He alleges that he received "threats from the staff towards him physically as well as towards [h]is personal property."  (*Id.* ¶ 16.)

On June 28, 2021, the unit manager at SCI Camp Hill called Mr. Hill to appear for an informal misconduct hearing.  (*Id.* ¶ 18.)  He told Mr. Hill that Defendant Knaub had issued him an informal misconduct five (5) days ago for loitering in the day room.  (*Id.* ¶ 19.)  Mr. Hill indicated that "he did not recall the incident and was not given any notice of the informal misconduct."  (*Id.* ¶ 20.)  The unit manager responded that he "was not entitled to notice and tried to convince him to accept an informal sanction."  (*Id.* ¶ 21.)  Mr. Hill, however, refused and noted that he wished to challenge the charges.  (*Id.* ¶ 22.)

Mr. Hill went to Defendant Knaub about the informal misconduct, and Defendant Knaub told him to "go and lock up in his cell."  (*Id.* ¶¶ 24-25.)  Mr. Hill tried to explain that it was his exercise time, but alleges that Defendant Knaub threatened to spray him if he did not return to his cell.  (*Id.* ¶ 27.)  Mr. Hill "turned to go to his cell, [but] when he looked back at [Defendant Knaub], he sprayed him

in the face." (*Id.* ¶ 28.)  Mr. Hill alleges that he did not try to resist and that he has pre-existing respiratory conditions known to staff members.  (*Id.* ¶¶ 29-30.)  Mr. Hill "tried to block the spray, which [Defendant] Knaub used as a pretext to further assault him." (*Id.* ¶ 32.)  Mr. Hill avers that Defendant Knaub tackled him and slammed him to the ground.  (*Id.* ¶ 33.)  Defendant Knaub subsequently claimed that Mr. Hill "charged him with a pencil." (*Id.* ¶ 34; Doc. No. 1-2.)  Mr. Hill now suffers from blurred vision, had an asthma attack and had to be placed on oxygen, and suffered "injuries to the neck, right elbow[,] and left knee from being slammed to the ground." (Doc. No. 1 ¶¶ 35-37.)  He also suffered cuts and numbness from the handcuffs.  (*Id.* ¶ 37.)  He submitted numerous requests for medical attention, all of which were ignored.  (*Id.* ¶ 39.)

Plaintiffs aver that on June 29, 2021, Defendants Harry and Sorber "arranged Mr. Hill's immediate [t]ransfer from SCI Camp Hill to SCI Phoenix where he was placed back in isolation." (*Id.* ¶ 40.)  He was transferred without any of his personal property and "was put in the cell with nothing but his O.C. sprayed jumpsuit." (*Id.* ¶ 41.)  Mr. Hill was not seen by medical until July 12, 2021.  (*Id.* ¶ 43.)  Plaintiffs aver that medical did not check his eyes, breathing, or heart, and failed to take X-rays.  (*Id.*)  They "simply prescribed him some Motrin for the pain." (*Id.*)

On June 30, 2021, Mr. Hill met with the Program Review Committee ("PRC"), consisting of Defendants Bradley and Stenkowski, at SCI Phoenix.  (*Id.*

¶ 44.)  The PRC told Mr. Hill that "they would be processing him for the Restricted Release Program (RRL) regardless of the outcome of his misconduct."  (*Id.* ¶ 45.) RRL "is an indefinite isolation status reserved for prisoners with serious assaults [w]hile in jail or commit murder while incarcerated."  (*Id.* ¶ 47.)  In July 2021, Mr. Hill "was found guilty of assault for allegedly charging [Defendant Knaub] and given 90 days in isolation."  (*Id.* ¶ 50.)  He avers that Defendants Harry and Sorber arranged his transfer to have him placed in RRL.  (*Id.* ¶ 52.)  He also claims that all of his grievances and appeals disappear.  (*Id.* ¶ 53.)

Mrs. Hill avers that she physically, emotionally, and financially suffers from anything that Mr. Hill suffers.  (*Id.* ¶¶ 17, 39, 42.)  Based on the foregoing, Plaintiffs assert violations of their First, Eighth, and Fourteenth Amendment rights.  (*Id.* at 1.) They also "allege the torts of assault and battery, negligence[,] and interference with their conjugal rights."  (*Id.*)  Plaintiffs seek declaratory and injunctive relief, as well as compensatory and punitive damages.  (*Id.* at 8.)

## II.   LEGAL STANDARDS

### A.   Screening and Dismissal of *In Forma Pauperis* Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  If a complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted,"

the Court must dismiss the complaint. *See* 28 U.S.C. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners and other individuals proceeding *in forma pauperis*, as well as prisoners challenging prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted.").

A complaint is frivolous if it lacks an arguable basis either in law or fact. *See Mitchell v. Horn*, 381 F.3d 523, 530 (3d Cir. 2003) (citing *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989)). When deciding whether a complaint fails to state a claim on which relief may be granted, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Smithson v. Koons*, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure."); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 679; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when

reviewing a Rule 12(b)(6) motion:  (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  In addition, in the specific context of *pro se* prisoner litigation, a district court must be mindful that a document filed *pro se* is "to be liberally construed."  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle*, 429 U.S. at 106) (internal quotation marks omitted)).

### B.    Claims Filed Pursuant to 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  *See* 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*  "Section 1983 is not a source of substantive rights," but is merely a means

7

through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).   To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.   DISCUSSION

### A.   Plaintiffs' Complaint

#### 1.   Claims Asserted by Plaintiff Donna Hill

As noted *supra*, Mrs. Hill asserts that, as a married couple, "anything that Mr. Hill suffers, now and in the future, affects [her] physically, emotionally[,] and financially" (Doc. No. 1 ¶ 17.)   It is clear that Mrs. Hill's claims are based on alleged violations of Mr. Hill's civil rights.   However, it is "well-established that a spouse . . . has no standing to raise § 1983 claims resting on violations of her husband's constitutional rights." *Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 381 (E.D. Pa. 2002) (citations omitted).

Plaintiffs do suggest that Defendants interfered with their "conjugal rights." (Doc. No. 1.)   In *Pahle*, the Eastern District of Pennsylvania concluded that "a

8

husband or wife should be able to claim violations of his or her *own* constitutional rights under § 1983 for unlawfully government-imposed injuries to a spouse that have a devastating effect on their marriage; namely, he or she can allege deprivation of consortium without Due Process of Law." *Pahle*, 228 F. Supp. 2d at 381 (emphasis in original). Nothing in the complaint, however, suggests that Mrs. Hill is asserting that her own constitutional rights were violated. Moreover, even if the Court construed Mrs. Hill as asserting a direct loss of consortium claim under § 1983, she has alleged no facts suggesting that Defendants specifically intended to interfere with her spousal relationship with Mr. Hill. *See Mintz v. Upper Mount Bethel Twp.*, No. 12-6719, 2013 WL 3090720, at *7 (E.D. Pa. June 20, 2013). Accordingly, the Court will dismiss any claims asserted by Mrs. Hill.

### 2. Claims Concerning Events at SCI Camp Hill

#### a. Claims Against Defendant Harry

Mr. Hill has brought claims against Defendant Harry, the Superintendent of SCI Camp Hill. He vaguely suggests that on June 29, 2021, Defendant Harry arranged his transfer from SCI Camp Hill to SCI Phoenix. (Doc. No. 1 ¶ 40.) He suggests that this transfer was made "to have him placed on RRL." (*Id.* ¶ 52.)

For a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. *See Rode v. Dellarciprete*, 845 F.2d 1195,

1207 (3d Cir. 1988); *Solan v. Ranck*, 326 F. App'x 97, 100 (3d Cir. 2009).

Therefore, supervisors cannot be liable under § 1983 on the traditional standard

of *respondeat superior*.   *See Santiago*, 629 F.3d at 128.   Instead, there are two

theories of supervisory liability that are applicable to § 1983 claims: (1) "a supervisor

may be personally liable under § 1983 if he or she participated in violating the

plaintiff's rights, directed others to violate them, or, as the person in charge, had

knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers

may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate

indifference to the consequences, established and maintained a policy, practice or

custom which directly caused [the] constitutional harm.'"   *See A.M. ex rel. J.M.K. v.*

*Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

To the extent Mr. Hill asserts that Defendant Harry violated his rights by

having him transferred to SCI Phoenix, it is well established that "an inmate does

not have the right to 'be placed in any particular prison.'"   *See Chavarriaga v. New*

*Jersey Dep't of Corr.*, 806 F.3d 210, 225 (3d Cir. 2015) (quoting *Meachum v. Fano*,

427 U.S. 215, 224 (1976)).   Mr. Hill, therefore, cannot maintain any constitutional

claim regarding his transfer against Defendant Harry.

Moreover, Mr. Hill's complaint fails to set forth facts suggesting that

Defendant Harry was personally involved in the decision to place him on RRL.

Moreover, the complaint fails to set forth plausible supervisory liability claims

against Defendant Harry. Mr. Hill has pled no facts suggesting that Defendant Harry participated or had knowledge of and acquiesced in the alleged violation of his rights, and he has not identified any policy that allegedly caused the violation of his rights. *See McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009). Accordingly, Mr. Hill's claims against Defendant Harry are subject to dismissal.

### b.     First Amendment Retaliation Claims

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a

causal link between the two events.  *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).  The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link."  *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  *Rauser*, 241 F.3d at 334.  "This is often referred to as the 'same decision defense.'"  *Watson*, 834 F.3d at 422.  If the prison officials can make this showing, it defeats the retaliation claim.  *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

In the complaint, Mr. Hill suggests that Defendant Knaub retaliated against him for his verbal complaints about the alleged false misconduct by using excessive force against him.  (Doc. No. 1 ¶¶ 24-37.)  Verbal complaints constitute protected activity for purposes of a First Amendment retaliation claim.  *See Mack v. Warden*

*Loretto FCI*, 839 F.3d 286, 297-99 (3d Cir. 2016); *Brewer v. Kamas*, 533 F. Supp. 2d 318, 329 (W.D.N.Y. 2008) (citing *Smith v. Woods*, No. 9:03-cv-480, 2006 WL 1133247, at *10 (N.D.N.Y. 2006); *Davila-Bajana v. Holohan*, No. 04-253 Erie, 2007 WL 2811633, at *5 (W.D. Pa. Sept. 24, 2007) (assuming that an inmate-plaintiff's verbal complaints were constitutionally protected activity). In light of these allegations, the Court concludes that Mr. Hill has set forth a plausible First Amendment retaliation claim against Defendant Knaub.

### c.   Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. An Eighth Amendment claim includes both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. *See id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *Id.*

### 1.   Denial of Medical Care

To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is

whether the defendant (1) was subjectively deliberately indifferent to (2) the plaintiff's objectively serious medical needs.  *See Farmer*, 511 U.S. at 834, 837; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety."  *See Farmer*, 511 U.S. at 837.  Circumstantial evidence may establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it.  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842).  The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.  *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

In the complaint, Mr. Hill vaguely alleges that his numerous requests for medical treatment, submitted after the alleged use of excessive force by Defendant Knaub, were ignored.  (Doc. No. 1 ¶ 38.)  Mr. Hill, however, fails to allege that Defendants Harry and Knaub, the two Defendants employed at SCI Camp Hill, were personally involved in denying him medical treatment.  *See Robinson*, 2017 WL

2152365, at *1-2.  Mr. Hill's Eighth Amendment claim regarding the denial of medical care will, therefore, be dismissed.

### 2.    Excessive Force

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where a[] [convicted] inmate challenges a prison official's use of force as excessive and unjustified." *See Brooks v. Kyler*, 204 F.3d 102, 105 (3d Cir. 2000).  The standard governing the Court's inquiry as to whether a plaintiff has a viable Eighth Amendment excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *See Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  In making this determination, courts are tasked with evaluating the following factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Brooks*, 204 F.3d at 106 (quoting *Whitley*, 475 U.S. at 321).  In the complaint, Mr. Hill alleges that Defendant Knaub used excessive force against him by spraying him in the face with OC spray, tackling him, and slamming him to the ground.  (Doc. No. 1 ¶¶ 28-34.)  In light of these allegations, the Court concludes that Mr. Hill has set

forth a plausible Eighth Amendment excessive force claim against Defendant Knaub.

### d.    Fourteenth Amendment Due Process Claim

Mr. Hill also asserts that his Fourteenth Amendment due process rights were violated when officers deprived him of personal property.  (Doc. No. 1 at 1.) Specifically, Mr. Hill alleges that his radio and family photographs were confiscated when he arrived at SCI Camp Hill.  (*Id.* ¶ 11.)  However, neither negligent nor intentional deprivations of property by state officials give rise to a due process violation if state law provides adequate post-deprivation remedies.  *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due process); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process if meaningful post–deprivation remedy for loss is available).

The Third Circuit has held that the Pennsylvania DOC's grievance procedure constitutes an adequate post-deprivation remedy.  *See Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000).  Pennsylvania state law also provides an adequate remedy for prison officials' unlawful deprivation of inmate property.  *See* 42 Pa. Cons. Stat. Ann. § 8522(b)(3); *see also Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (noting that the Pennsylvania Tort Claims Act provides adequate remedy for willful

destruction of property).  In his complaint, Mr. Hill appears to suggest that he availed himself of his administrative remedies but received no relief.  Thus, an adequate post-deprivation remedy was available to him.  To the extent Mr. Hill asserts that his grievances were mishandled or wrongfully denied, he has not alleged the denial of a federal right.  *See Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009).  Likewise, if dissatisfied with the responses to his grievances, Plaintiff has a suitable remedy to pursue under the Pennsylvania Tort Claims Act.  *See Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (noting that "[e]ven if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy").  Mr. Hill's Fourteenth Amendment due process claim is, therefore, subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because he cannot state a cognizable constitutional claim.

### e.    Claims Seeking Declaratory and Injunctive Relief

As noted *supra*, Mr. Hill seeks declaratory and injunctive relief against all named Defendants.  However, Plaintiff is now incarcerated at SCI Phoenix and is no longer at SCI Camp Hill.  Plaintiff's claims for declaratory and injunctive relief against Defendants Harry and Knaub are, therefore, moot.  *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (noting that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims").

### 3.  Claims Concerning Events at SCI Phoenix

As noted *supra*, Mr. Hill asserts claims against Defendants Sorber, Bradley, Terra, and Stenkowski concerning events that have occurred during his incarceration at SCI Phoenix.  SCI Phoenix, however, is located in Montgomery County, within the Eastern District of Pennsylvania.  *See* 28 U.S.C. § 118(a).  Accordingly, because there is no apparent basis for venue for these claims in this district, and because Defendants Sorber, Bradley, Terra, and Stenkowski are located there, the Court will transfer Mr. Hill's claims against these Defendants to the United States District Court for the Eastern District of Pennsylvania.  *See* 28 U.S.C. §§ 1391(b) & 1406(a); *Lafferty v. St. Riel*, 495 F.3d 72, 74-75 & n.3 (3d Cir. 2007) (declining to disturb district court's *sua sponte* transfer under § 1406(a)); *Decker v. Dyson*, 165 F. App'x 951, 954 n.3 (3d Cir. 2006) (district court may *sua sponte* transfer case under § 1406(a)).

### B.  Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may

deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, the Court concludes that it would be futile to grant Mrs. Hill leave to amend her claims, as well as to grant Mr. Hill leave to amend his Fourteenth Amendment due process claims regarding the deprivation of personal property. Those claims, therefore, will be dismissed with prejudice. However, it is neither clear that amendment would be futile, nor is there any basis to believe that amendment would be inequitable, with respect to Mr. Hill's claims against Defendant Harry and his claims regarding the denial of medical care at SCI Camp Hill. Accordingly, Plaintiff will be granted leave to file an amended complaint with respect to such claims. Plaintiff is advised that the amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document. The amended complaint should set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be

19

numbered.  It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of each defendant in the acts that he claims violated his rights.  Mere conclusory allegations will not set forth a plausible claim. Plaintiff is advised that if he fails to file an amended complaint, the above-captioned case will proceed only as to his First Amendment retaliation and Eighth Amendment excessive force claims against Defendant Knaub.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' motions for leave to proceed *in forma pauperis*.  (Doc. Nos. 8, 10.)  The Court will partially dismiss the complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Mrs. Hill's claims, as well as Mr. Hill's Fourteenth Amendment due process claims regarding the deprivation of personal property, will be denied with prejudice.  Mr. Hill's claims against Defendant Harry and his Eighth Amendment claims concerning the denial of medical care at SCI Camp Hill will be denied without prejudice to his right to file an amended complaint, consistent with the Court's discussion herein.  Mr. Hill's claims against Defendant Sorber, Bradley, Terra, and Stenkowski will be transferred to the United States District Court for the Eastern District of Pennsylvania for further proceedings there. An appropriate Order follows.